[Civ. No. 15375.   Second Dist., Div. Three.   Mar. 2, 1948.]

TERMINIX COMPANY (a Corporation), Appellant, v. CONTRACTORS' STATE LICENSE BOARD OF THE DEPARTMENT OF PROFESSIONAL AND VOCATIONAL STANDARDS, Respondent.

Henry C. Rohr for Appellant.

Fred N. Howser, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—This is an appeal by the Terminix Company, hereafter called appellant, from a judgment denying a peremptory writ of mandate. Appellant initiated these mandamus proceedings in order to obtain court review of the validity of an order of the Contractors' State License Board, hereafter called respondent, suspending appellant's contractor's license for six months and imposing upon it other penalties for alleged violations of the Contractors' License Law as codified. (Bus. & Prof. Code, §§ 7000-7145 —all section references hereafter made are to this code unless otherwise indicated.) By a writ of supersedeas issued by this court upon stipulation of the parties, the execution of the judgment appealed from has been stayed pending final determination of this appeal.

The complaint before respondent charged appellant with having violated sections 7109, 7113, 7115, 7116 and 7119 of the Contractors' License Law, in 40 particulars in the course of certain termite control work done for six customers. After a lengthy hearing respondent found that appellant had violated the aforementioned sections, with the exception of section 7115, substantially as alleged, in 27 particulars. The trial court found, on the basis of the record made before respondent and one lone affidavit of a customer, Mrs. Beardsley, that appellant had violated the aforementioned sections, save for section 7115, in nine particulars in the course of work done for four customers, and that otherwise appellant was not guilty of the violations found by respondent. Upon this appeal we are concerned only with the legal correctness of those violations found by the trial court.

Appellant is licensed under both the Contractors' License Law and the Structural Pest Control Act (§§ 8500-8677). Its work, however, is exclusively pest control work, including structural work incidental thereto. The trial court found appellant guilty of having violated four sections of the Contractors' License Law which is administered by respondent. Summarily stated, these sections are as follows: (1) wilful, material and prejudicial departure from or disregard of plans or specifications (§ 7109); (2) material failure to complete an operation for the contract price (§ 7113); (3) doing a wilful or fraudulent act to the substantial injury of another (§ 7116); (4) wilful and unjustified failure or refusal to prosecute an operation with reasonable diligence to the material injury of another (§ 7119). Each of these statutory

forms of misconduct is expressly made a cause for disciplinary action by respondent.

These nine alleged violations occurred on the Beardsley, Byram, Hamilton and Holm jobs, all performed by appellant's Pomona office and all substantially performed while that office was under the management of one Carter Griner. Briefly stated, appellant's misconduct, as determined by the trial court, consisted of the following actions. Appellant, in violation of section 7109, breached its salesman's oral promise to Mrs. Beardsley, made at the time of the execution of its written contract with her, that it would deduct from the contract price for any porches which did not require seal-off. Appellant likewise, in violation of sections 7109 and 7116, breached the oral promises made by its salesman to Byram that if Byram did certain of the work covered by written contract between appellant and Byram, he would receive a deduction from the contract price for such work, and also failed to give Byram a credit for certain other work done by him although their written agreement called for the credit. In addition, appellant, in violation of the same two sections, double-charged Byram $6.84 for certain lumber. Appellant, in violation of section 7116, overcharged Hamilton and Holm for terminix, its insecticide. Appellant also, in violation of sections 7109 and 7116, built an inferior and unsatisfactory water drain for Holm and, in violation of sections 7109, 7113, 7116 and 7119, did a very poor and excessively costly restucco job upon his house, thereby breaching Griner's oral warranty to him that appellant would do the job as well and as cheaply as a competent stucco contractor would do it.

The trial court determined that appellant charged Hamilton and Holm, in violation of section 7116, for more Terminix fluid than was actually used on their jobs. Appellant challenges this conclusion upon the ground that the Contractors' License Law has never applied to non-structural work and that the mere use of an insecticide has always been governed exclusively by the Structural Pest Control Act. In support of this position appellant points out that it is licensed under both statutes and that the treating of the premises of Hamilton and Holm, for which the questioned charges were made, came exclusively under the latter act (§ 8505). Respondent replies that treating a building with Terminix is repairing and improving the building within the meaning of the statutory definition of the work for which a

contractor's license is required (§ 7026). We cannot agree that the word "improve" as used in the section can reasonably be interpreted as applying to the use of Terminix fluid, unconnected with any structural work. A construction of section 7026 which would bring all pest control work under the Contractors' License Law would render the Structural Pest Control Act unnecessary and superfluous. Consequently, we conclude that such treating and the charges for the fluid so used fall within the province of the Structural Pest Control Board rather than respondent, Contractors' State License Board. Accordingly, as to these overcharges for Terminix, the proceeding before respondent was unauthorized and its order is void.

█ As already noted, several alleged violations were predicated upon the failure of appellant to give effect to oral promises of its representatives. These were: (1) the failure to give credit to Mrs. Beardsley, as orally promised by a salesman, for certain work which was found to be unnecessary; (2) the failures to give credit, as promised orally by a salesman, to Byram for the removal of debris and construction of a flashwall, which work he had done; and (3) the breach of the oral promise made to Holm by Griner, the branch manager, that appellant would do the restucco work on his house as cheaply and as well as a competent stucco contractor would do it. All these alleged violations must be rejected because they run counter to the fundamental principle of the law of agency, that if a third person has notice of a limitation upon an agent's authority, he cannot hold the principal responsible for a transaction with an agent in violation of such limitation.

Appellant executed with Beardsley, Byram, and Holm, as it apparently did with all customers, standard written contracts. These contracts contained the following language in large clear type: "No representative has any power or authority to make any alterations of this contract or any promises or representations other than contained herein, and this contract contains the entire agreement of the parties." Respecting porches, the Beardsley fixed-price contract read: "Seal off all porches if necessary." The Byram contract, also for a fixed price, was silent as to deductions to be made if the customer himself removed the debris and installed the flashwall, although two similar deductions were specifically mentioned. The Holm contract was, by its written terms, simply a time and material contract with no price stated

for appellant's work thereunder. Thus, in all three cases the oral promises relied on by respondent constituted variances from the terms of the written contracts. There was no finding that any of these promises was made without intention to perform it; hence no fraud was or could be found to have been committed by the representatives in making these promises. (Civ. Code, §§ 1572, 1710.)

The effect of the language quoted from the three contracts was to notify the customers that as to them appellant's representatives were powerless to vary by oral promises the terms of the written contracts. The representatives had no authority to make to them the oral promises here involved, and appellant's responsibility to them did not extend beyond the terms of its written contracts with them. (Civ. Code, § 2318; Rest. Agency, §§ 166, 260, com. (c); *Harnischfeger Sales Corp.* v. *Coats,* 4 Cal.2d 319, 320-321 [48 P.2d 662]; *Gridley* v. *Tilson,* 202 Cal. 748, 751-752 [262 P. 322]; *Hall* v. *Remp,* 73 Cal.App. 2d 377, 381 [166 P.2d 372]; cf., Rest. Agency, §§ 63 com. (f), 258 com. (e).) ■ It follows that since these oral promises were beyond the actual and the ostensible authority of appellant's representatives, respondent cannot hold appellant for statutory violations based upon breach of them.

■ The remaining alleged violations and all of those which we have discussed up to this point, with the exception of the Beardsley overcharge, must fall because an essential element of each of them, material prejudice or substantial injury, is lacking. As can be readily seen from our previously presented summary of the four statutory provisions, sections 7109, 7113, 7116 and 7119, such prejudice or injury is expressly required, save for section 7113. However, we believe this requirement to be implicit in this section. It deals with fixed-price contracts only, and a material failure of the contractor to complete such a contract. Necessarily, in such a case, the owner will suffer to the extent of the cost of completion which must be done at his own expense. Aside from the unsatisfactory work done for Holm, appellant's claimed misconduct consisted of the making of certain direct and indirect overcharges which we have heretofore briefly stated. Yet, of the four customers involved, only Beardsley paid his bill as rendered. Long before the complaint herein was filed with respondent, both Byram and Hamilton made settlements with appellant which respondent's hearing officer characterized as "eminently fair" and which granted to

them in credit adjustment substantially more than the trial court found was due to them. At the time of the hearing before respondent Holm had paid appellant nothing, and the record does not indicate any subsequent change in this situation. Thus Byram, Hamilton and Holm have suffered no injury or prejudice by reason of appellant's alleged overcharges. Accordingly, no cause for disciplinary action by respondent against appellant existed because of them. The asserted violation based upon the Beardsley overcharge, it will be recalled, has already been rejected on another ground.

In the matter of the unsatisfactory work done for Holm, the situation, while differing factually, does not differ legally from those of Byram and Hamilton. While appellant has made no settlement with Holm, it offered, prior to the initiation of this proceeding before respondent, to settle with him on terms more favorable to him than he was entitled to under the findings of respondent's hearing officer.

Appellant had two basic written contracts with Holm. There was a time and material contract covering generally structural termite control work above-ground and a fixed-price contract in the amount of $330.10 covering generally treatment for subterranean termites. This latter contract was supplemented by an additional work authorization calling for, among other things, the construction of a "cement" drain for a total additional price of $48. In uncovering the infested portions of the house for treatment of the wooden timbers with Terminix, in excess of 60 per cent of the stucco was removed from the walls. Two coats of new stucco were then applied before Holm stopped all work under the time and material contract because its cost was running far beyond what he had anticipated. The restucco work done was so poor that a finish coat could not correct its very substantial defects. The drain was likewise an inferior job; it was poorly constructed of used brick and cement. A good workmanlike stucco job will require the removal of all stucco applied by appellant's workmen, relathing, and the application of three coats of stucco. The drain, likewise, requires rebuilding.

Appellant presented to Holm an invoice in the amount of $1,625.23 for all of its work for him. Respondent's hearing officer determined that Holm was entitled to a credit adjustment on this job of $273.16 which, when applied,

would leave Holm owing appellant $1,352.07, and that in addition appellant should redo the stucco job completely at no cost to Holm. After discussing the matter with appellant's representative, and months before the commencement of this proceeding before respondent, Holm wrote appellant a letter as follows: "Could you please send me a new statement on the 'as is' settlement for $800 (eight hundred dollars) on the house. Also one for $1200 (twelve hundred dollars) to put the house in first class condition. I need this in order to get the job financed and as to which I can settle on." Appellant replied promptly, in part, "You may have your choice of either $800 and keep the house in its present condition or if you see fit to have us put the house back in good condition we will do same for $1,200." Holm did not accept either proposition. A comparison of the terms of this offer with what respondent found was due as between Holm and appellant establishes that completion of the job by appellant on the terms offered would have amounted to substantially more than complete performance or restitution, as defined by respondent. As long as the matter stands in the present status, appellant has been guilty of no violation of the act. Its offer in good faith, coupled with its admitted ability to complete the work for a fair price, must, under the circumstances, and for present purposes, be deemed the equivalent of performance.

The statute does not penalize a licensee for making overcharges which the owner does not pay, nor for poor work which is done over to the satisfaction of the owner. A contractor cannot be held guilty of a violation of the act so long as he stands ready, able and willing to fulfill his contract.

It appears that this proceeding was instituted and has been prosecuted under a lamentable lack of understanding of the statute, but there is more to be said on that subject. Appellant's vice president and general manager in Los Angeles learned soon after the jobs in question were done, that some investigation had been undertaken by the Contractors' State License Board and the Structural Pest Control Board. With the attorney of the company he sought information from the representatives of the two boards respecting any complaints that had been made, but they were refused any information. They interviewed their customers, including those hereinbefore mentioned, asking whether they had any complaints on the work that had been done for them. The

customers refused to discuss any matters with them and refused to pay anything on their bills. All together, some $6,000 was due appellant, which the customers refused to pay. This situation existed for the better part of a year before settlements were made with Byram and Hamilton and attempted with Holm. The representatives of the boards had taken it upon themselves to instruct the customers to pay no money to appellant and to enter into no agreements with it. The Structural Pest Control Board wrote to Hamilton in February, 1944, giving him such instructions and telling him he would be advised later as to what course he should pursue. Other customers received their instructions orally. Eventually the instructions were countermanded; the customers were then willing to talk with appellant and settlements were promptly arranged with Byram and Hamilton, which the hearing officer found to be entirely fair. This interference by representatives of the boards was unfair, officious and an abuse of authority. It evidenced a gross misconception of the duties of the board's representatives and a highly prejudiced attitude toward the appellant. [6] Misunderstanding of the statute, in general, was exhibited throughout the entire proceeding. Although the hearing officer found that fair settlements had been made with Byram and Hamilton, he nevertheless found that appellant had violated certain sections of the statute, the legal effect being that appellant had been guilty of wilful and fraudulent conduct, or other conduct which had resulted in injury and prejudice to these owners. Except for the finding that the several sections had been violated, there was no finding by the hearing officers or the trial court that any of the owners had suffered injury or prejudice. There was no evidence whatever of injury or prejudice suffered by any of the owners unless it can be found in the facts hereinbefore stated. Of course a debtor who has been overcharged by his creditor suffers no detriment unless he pays the overcharge. A contractor who has done inferior work is not a violator of the statute if, before he has made any settlement with the owner, he offers and is able and willing to replace the inferior work with good work at no expense to the owner. In determining whether injury has resulted to the owner, the positions of the owner and contractor must be judged as of the time when their business is concluded. Although during the course of

the work there may be mistakes and failures on the part of the contractor to keep his agreements, if, when the time for payment for the work arrives, he makes a fair and satisfactory settlement with the owner, he has been guilty of no breach of the law and the same, of course, is true if he corrects any overcharges whether they were made inadvertently or intentionally.

After an extended hearing the hearing officer made findings as to the merits of the claims of the owners, Byram and Hamilton, in their dealings with appellant, and specified the credits and allowances to which they were entitled, which, as we have said, amounted to less than they had received. The findings as to these owners and the findings as to the Holm job, with the undisputed evidence as to appellants' willingness to complete that job, leave no basis for disciplinary action by respondent. It will be for Mr. Holm to decide whether he wishes appellant to restucco his house and put it back in good condition on the terms offered by appellant. If he chooses not to have the work done, the case will be one for the courts and not respondent.

The erroneous application of the statute to the established facts requires setting aside of the order of the board pursuant to section 1094.5(b) (e), of the Code of Civil Procedure, for the reasons hereinbefore stated. The acts of appellant as established by the findings of the trial court do not support its conclusions of law that appellant violated the statute and its judgment denying the writ was therefore in error.

The judgment is reversed for further proceedings in conformity with the views herein expressed.

Vallée, J. pro tem., concurred.

WOOD, J.—I concur in the judgment. In my opinion, even though Mr. Holm had not paid for the unsatisfactory work, he suffered substantial injury as a result of the wilful and fraudulent conduct of appellant's branch manager, in that, such conduct caused Mr. Holm's house to be in bad repair, in poor structural condition, and unsightly for an extended period of time, which condition undoubtedly depreciated its value and detrimentally affected its salability and rentability. I think that discipline should not be imposed on appellant, however, under the circumstances in this case where, as a result of the disloyalty and deceitfulness of

the manager of the branch office in Pomona, none of those in charge of appellant's main office in Los Angeles, nor any of its officers, had, or in the exercise of due diligence could have had, any actual knowledge of the branch manager's misconduct.

Respondent's petition for a hearing by the Supreme Court was denied April 29, 1948. Traynor, J., voted for a hearing.