[No. E023997. Fourth Dist., Div. Two. Feb. 17, 2000.]

CODY BRYAN TELLIS, Plaintiff and Appellant, v.
CONTRACTORS' STATE LICENSE BOARD, Defendant and
Respondent.

## COUNSEL

F. Beard Hobbs and William M. Nolan for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Margaret A. Lafko and Ronald A. Casino, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**GAUT, J.**—This is an appeal by Cody Bryan Tellis, doing business as Cody Tellis Construction, from a judgment denying Tellis's petition for a peremptory writ of mandate. Tellis's writ petition sought review of the decision of the Registrar of the Contractors' State License Board (Board), adopting an administrative judge's decision finding that Tellis violated Business and Professions Code sections 7109 and 7113,[1] based on 17 instances of substandard construction work committed during construction of a home.

Tellis contends the trial court erred in finding there was substantial evidence supporting the administrative judge's decision. He claims the trial court misconstrued section 7109, and Tellis did not violate section 7113 because he was willing to repair the substandard work. He also argues that

---

[1] Unless otherwise noted, all statutory references are to the Business and Professions Code.

the cited instances of substandard work were minor in nature and were warranty matters which were not subject to section 7113.

We conclude there was sufficient evidence that Tellis committed violations of sections 7109 and 7113, and affirm the trial court judgment.

### 1.  *Facts and Procedural Background*

Tellis entered into a contract with Rose and Paul Watson for the construction of the Watsons' home for $226,000.[2] Tellis built the home within five months. The final inspection was signed off on September 15, 1995. The Watsons gave Tellis three punch lists of repair items to be completed before close of escrow. On September 20, 1995, the Watsons signed amended escrow instructions acknowledging that Tellis had satisfactorily completed all of the requested repairs. Escrow closed and the Watsons paid Tellis in full for the project.

After the Watsons moved into their new home in October 1995, they discovered additional items requiring repairs. In June 1996, the Watsons gave Tellis a punch list of 22 items requiring repair. Tellis proceeded to make some of the requested repairs, including retaining Kevin Ham, a tile contractor, to make tile repairs. The Watsons and Tellis disagreed as to the method of repairing some of the items. For instance, the Watsons wanted the tile kitchen floor replaced because it was uneven, and Tellis simply wanted to replace the loose tiles. A dispute also arose between Ham and the Watsons regarding the length of the warranty for Ham's repair work.

On August 4, 1996, Tellis sent the Watsons a letter stating that he had no control over Ham's warranty policies and disputed the Watsons' claim that the swamp cooler was undersized. Tellis acknowledged that the other requested repairs were needed and was willing to make them.

On August 11, 1996, the Watsons filed a complaint against Tellis with the Board, and told Tellis he could not complete the repairs until their complaint filed with the Board was resolved. They also wrote Tellis on August 13, 1996, informing him that 10 additional items needed repairing. On September 5, 1996, Ham sent a letter to Tellis stating that the Watsons refused to allow him to make the repairs. Mrs. Watson testified at the administrative hearing that she never stopped Ham from making the repairs. Rather, he refused to make them.

Industry expert, Michael Mollica, retained by deputy board registrar Colleen Fountain, investigated the Watsons' complaint, which contained 27

---

[2]With change orders and adjustments, the contract price increased to $229,919.

items allegedly requiring repair. His report indicated that 20 of the 27 items constituted work which was below industry standards. The substandard items included the kitchen floor, which Mollica recommended replacing.

Between October 24, 1996, and January 22, 1997, deputy board registrar Fountain attempted to resolve the matter informally through negotiations with the Watsons and Tellis. As of January 27, 1997, Tellis refused to repair the kitchen floor in the manner recommended by Mollica and had not yet completed repairs of some of the other items. Tellis was told on January 25, 1997, that he could begin the repairs on January 27th. Fountain set January 31, 1997, as the deadline for substantial completion of the repairs, despite Tellis's protestation that he could not complete the repairs by that date. Fountain told him to advise her of the status of the repairs by January 31, 1997. On that date, Tellis did so, and Fountain told him to give her another status report on February 6, 1997. On February 4, 1997, he advised her in writing that he had done some repairs, but the tile contractor he had retained was unable to perform the larger repairs until March. Fountain concluded Tellis was making adequate progress.

The Watsons, however, were upset that the repairs had not been completed. In exasperation, Mrs. Watson called Fountain on February 7th. Upon being informed Fountain was out of the office, Mrs. Watson complained to Fountain's supervisor, Carlos Marquez, and requested hiring someone else to do the repairs.

Without reviewing the case file, including Tellis's most recent status report, Marquez agreed that Tellis had had ample opportunity to complete the repairs and authorized Mrs. Watson to hire someone else. Marquez testified at the administrative hearing that had he read Tellis's February 4th status report, his decision might have been different. He further testified that 30 days was a reasonable period of time to allow for completion of repairs.

Mrs. Watson hired someone else to complete the repairs at a cost of $5,286. On March 21, 1997, the Board filed a citation against Tellis alleging violations of sections 7109 (willful departure from trade standards) and 7113 (material failure to complete project). Tellis appealed the citation, and following an administrative hearing, the administrative judge affirmed the Board's findings of violations of sections 7109 and 7113, based on 17 items of substandard work. The Board adopted the administrative judge's decision. Tellis filed in the superior court a petition for writ of administrative mandamus. The trial court denied Tellis's writ. Tellis then timely filed notice of this appeal.

## 2. Section 7109 Violation

■ Tellis contends the trial court erred in finding that substantial evidence supported the Board's determination that he violated section 7109 of the Contractors' State License Law (§ 7000 et seq.). We disagree for the reasons stated below.

The Contractors' State License Law provisions govern contractor licensing requirements and disciplinary actions against contractors. Disciplinary proceedings for violations of the Contractors' State License Law are subject to the Administrative Procedure Act (Gov. Code, § 11340 et seq.). ■ "Where, as here, the trial court has rendered its independent judgment following a review of the evidence presented at the administrative hearing, the role of this court is to determine only whether there is substantial evidence to support the trial court's judgment." (*Mickelson Concrete Co. v. Contractors' State License Bd.* (1979) 95 Cal.App.3d 631, 634 [157 Cal.Rptr. 96].)

When an appellate court reviews the trial court decision, it must affirm it if it is supported by substantial evidence. This court "must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment." (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52 [76 Cal.Rptr.2d 356].) If more than one rational inference can be deduced from the facts, we may not replace the trial court's conclusions with our own. (*Ibid.*) We may reverse the trial court if it fails to make a necessary factual determination or if its decision is based upon a faulty conclusion of law. (*Id.,* at p. 53.)

■ Tellis argues that the trial court and administrative law judge's determination that there was substantial evidence supporting a section 7109 violation was based on an erroneous interpretation of the section 7109 willfulness standard.

Section 7109, subdivision (a), states that "A willful departure in any material respect from accepted trade standards for good and workmanlike construction constitutes a cause for disciplinary action, unless the departure was in accordance with plans and specifications prepared by or under the direct supervision of an architect."

According to Tellis, under section 7109, evidence that the contractor knew his conduct was substandard was required in order for there to be a willful departure from trade standards, in violation of section 7109. The Board

argues that the general intent willfulness standard defined in Penal Code section 7, subdivision 1,[3] applies and all that is required is the willful act of performing the construction which is substandard. Knowledge that it is substandard is not required.

The trial court's statement of decision does not indicate whether it adopted Tellis's or the Board's interpretation of the willful standard. It merely states in pertinent part that ". . . the actual violations of law at issue occurred because the original product did not meet trade standards. Those standards cannot change because the parties attempt post-violation settlement."

The *Mickelson* decision, cited by the Board and Tellis in support of their positions regarding section 7109, is of little assistance in this case since it does not state whether the court applied the general intent willful standard or the willful standard requiring knowing departures from trade standards. In discussing willfulness under section 7109, the *Mickelson* court cites Penal Code section 7, subdivision 1. This indicates that the court assumed the general intent willful standard applied. But there is no discussion as to why the court may have concluded it applied.

Even assuming, without deciding, that the phrase "willful departure . . . from accepted trade standards" requires knowledge by the contractor that the work is substandard, we conclude there was substantial evidence supporting the finding that Tellis knew his work was substandard.

A reasonable inference could be made that Tellis knew his work was substandard based on evidence that he was a knowledgeable licensed contractor, with substantial construction experience. Such an inference is also supported by evidence that the section 7109 violation was based on 17 instances of substandard work involving significant errors, such as the failure to prepare surfaces properly for tiling; using improper adhesives causing tile to fall off; failing to use proper caulking when setting the sinks, which caused the sinks to come loose; failing to use a proper shower receptor; improperly mixing and installing mortar, which resulted in the shower stall leaking; failing to bond tiles properly to the floor and maintain a flat plane at the tile surface; and failing to attach tile trim properly around the sink, which caused water seepage under the sink and swelling of particle board cabinet material. In addition, the 17 instances of deficient work were found substandard by an experienced contractor retained by the Board to

---

[3]Penal Code section 7, subdivision 1, states: "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."

investigate the matter, and Tellis eventually agreed to repair the substandard work.

Although an inference could be made that this evidence also supported a finding of lack of willfulness, we must resolve all conflicts in favor of the Board, give that party the benefit of every reasonable inference in support of the judgment, and, hence, affirm the trial court's ruling based on substantial evidence that Tellis willfully departed from trade standards. (*Kazensky v. City of Merced, supra,* 65 Cal.App.4th at p. 52.)

### 3. *Section 7113 Violation*

Tellis contends there was also insufficient evidence to support the trial court's finding that there was substantial evidence supporting the Board's determination that Tellis violated section 7113.

Section 7113 provides: "Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or operation or in any modification of such contract constitutes a cause for disciplinary action."

The Board urges this court to conclude that since Tellis violated section 7109, he also necessarily violated section 7113. The elements of a section 7109 violation are not identical to the elements of a section 7113 violation. (*Mickelson Concrete Co. v. Contractors' State License Bd., supra,* 95 Cal.App.3d at p. 635.) Otherwise there would be no point in enacting two separate provisions. It cannot be assumed, based on our determination that Tellis violated section 7109, that he also violated section 7113.

Tellis argues that since he was ready, able and willing to repair the 17 items, he cannot be found to have violated section 7113. This raises the question of when did Tellis complete the contract under section 7113? If it was completed in September 1996, when Tellis was paid in full for the project, then his argument has no merit, since he did not agree until January 27, 1997, to repair all 17 items in the manner recommended by the Board's expert.

Tellis relies on *Terminix Co. v. Contractors' State etc. Bd.* (1948) 84 Cal.App.2d 167 [190 P.2d 24], in which the court held that Terminix did not violate sections 7109 and 7113 because there was no "material prejudice or substantial injury." (*Terminix, supra,* at p. 172.) After the Board's hearing officer in *Terminix* determined that Terminix should redo the stucco job at no cost, Terminix offered to reduce the bill, but the owner of the premises did not accept Terminix's offer.

The *Terminix* court concluded that completion of the job by Terminix on the terms offered would have amounted to more than complete performance or restitution, and therefore Terminix was not guilty of any violation: "Its offer in good faith, coupled with its admitted ability to complete the work for a fair price, must, under the circumstances, and for present purposes, be deemed the equivalent of performance." (*Terminix Co. v. Contractors' State etc. Bd., supra,* 84 Cal.App.2d at p. 174.) The *Terminix* court noted that "A contractor cannot be held guilty of a violation of the act so long as he stands ready, able and willing to fulfill his contract." (*Ibid.*)

But the *Terminix* court also indicated that such offers to repair substandard work must occur before payment in full for the project. "A contractor who has done inferior work is not a violator of the statute if, *before he has made any settlement with the owner,* he offers and is able and willing to replace the inferior work with good work at no expense to the owner. In determining whether injury has resulted to the owner, the positions of the owner and contractor must be judged *as of the time when their business is concluded.* Although during the course of the work there may be mistakes and failures on the part of the contractor to keep his agreements, if, *when the time for payment for the work arrives,* he makes a fair and satisfactory settlement with the owner, he has been guilty of no breach of the law and the same, of course, is true if he corrects any overcharges whether they were made inadvertently or intentionally." (*Terminix Co. v. Contractors' State etc. Bd., supra,* 84 Cal.App.2d at pp. 175-176, italics added.)

Tellis's reliance on *Terminix* is misplaced because in *Terminix* the owners had not paid the contractor in full for completion of the project when the contractor offered either to repair deficient work or reduce the contract price. Here, as conceded by Tellis in his appellant's opening brief, Tellis had ostensibly completed the project in September 1996, when he requested and received payment in full for the project. Any material substandard work existing at that time constituted a violation of section 7113. Tellis's agreement to repair the work later on does not negate the violation or absolve him of liability for the violation.

Tellis argues that the repairs in question did not constitute a "failure to complete a contract" under section 7113 because the repairs were post-completion warranty repairs. Even if they were warranty repairs, under *Mickelson Concrete Co. v. Contractors' State License Bd., supra,* 95 Cal.App.3d 631 and *Viking Pools, Inc. v. Maloney* (1989) 48 Cal.3d 602 [257 Cal.Rptr. 320, 770 P.2d 732], the failure to perform repairs requested after ostensible completion of a project may constitute a section 7113 violation.

In *Mickelson,* the plaintiff construction contractor poured a concrete slab. After completion, the owner discovered defects in the slab. The plaintiff

attempted to cure the cracked, uneven slab by pouring over it. The result was worse but the plaintiff would not repair the slab. The slab was repaired by someone else at an additional cost.

At the Board administrative hearing, the judge determined that the plaintiff's work did not meet accepted trade standards. The superior court and Court of Appeal upheld findings that the plaintiff had violated sections 7109 and 7113. The *Mickelson* court "held that a contractor's failure to take corrective action to make an ostensibly completed construction project an acceptable one that met trade standards was a violation of section 7113." (*Viking Pools, Inc. v. Maloney, supra,* 48 Cal.3d at p. 608.)

Acknowledging that there need not be a "willful" failure to complete the construction project in question, the *Mickelson* court concluded the record supported a section 7113 violation based on the following findings: "Mickelson agreed to construct the slab for a specified price, that the work which he did was unacceptable and did not meet trade standards, and that he failed to take appropriate corrective action after being repeatedly requested to do so." (*Mickelson Concrete Co. v. Contractors' State License Bd., supra,* 95 Cal.App.3d at p. 635.)

In *Viking,* Viking Pools, Inc., supplied and installed a pool. Three years later, while under warranty, the pool surface began to spot and blister from contaminants in the materials used to manufacture the pool. When notified of the problem, Viking refused to correct the problem. An administrative judge found Viking in violation of section 7113, and the Board issued a citation for the violation. The California Supreme Court held in *Viking* "that Viking's breach of an express, written warranty is an abandonment of, and a material failure to complete, a construction project or operation within the meaning of sections 7107 and 7113. Accordingly, we reverse the judgment of the Court of Appeal." (*Viking Pools, Inc. v. Maloney, supra,* 48 Cal.3d at p. 609.)

Here, Tellis entered into a construction contract for a specified price, his work was substandard, and he failed to correct the defects after being repeatedly requested to do so, beginning in June 1996. Tellis attempts to distinguish *Mickelson* by arguing that he agreed to correct the defects but the Watsons prevented him from doing so. Although there is evidence supporting a finding that Tellis might have completed the repairs had he been given a couple more months to do so, the evidence also supports a finding that he was given ample time to make the repairs and delayed making some of them by initially refusing to make them in the manner requested by the owners, and as recommended by the Board expert; and then finally agreeing to make

the repairs, but arranging for the repairs to be made by someone who was not available for over a month. Such circumstances supported a reasonable finding that the Watsons were justified in retaining someone else to do the work, and supported a finding that Tellis had been given a reasonable opportunity to complete the repairs.

Tellis argues that he did not violate section 7113 because the work cited as substandard did not constitute a "material" failure to complete the project. The substandard work, Tellis argues, merely involved use of the wrong kind of caulking material, some loose tiles, and some other minor tile work, which cost $5,286 to repair. In proportion to the cost of the $229,919 construction project, the cost of the repairs was minor.

The term "material" is not defined in the Contractors' State License Law nor are we aware of case law defining the term in the context of cases brought under the Contractors' State License Law. We thus rely on the common meaning of the term "material," which is defined in the dictionary as "substantial," as opposed to trivial. (Webster's 3d New Internat. Dict. (1993) p. 1392, col. 2; American Heritage Dict. (2d college ed. 1982) p. 772, col. 1.)[4]

We disagree that the evidence was insufficient to establish a material failure to complete the construction project. The proportionality of the cost of repairs to the cost of the project is not determinative of whether the substandard work constituted a material failure. Such a basis for determining materiality would mean that the larger the project, the more substandard work a contractor would be permitted to perform without sanction.

In determining whether there was a material or substantial failure to perform the contract, we consider the nature of the substandard work and its significance. Here, there were 17 instances confirmed by the Board's industry expert, which included significant instances of improper installation of sinks, showers, and toilets; unlevel floors; water leaks; and the use of improper materials. While the cost of repairing these items was substantially less than the contract price, there was ample evidence supporting a reasonable finding that the cost, nature, and amount of substandard work was substantial or material, as opposed to trivial.

If we were to conclude in this case that there had been no violation under section 7113, consistent with such holding, contractors could provide substandard work, demand full payment upon claiming they had completed a project, and then, in the event the owner went to the trouble of filing a

---

[4]The American Heritage Dictionary, *supra*, defines material as, "Substantial; noticeable: *a material improvement*. (At p. 772, col. 1.)"

complaint with the Board, avoid discipline by eventually agreeing to repair the substandard work. Such scenario is contrary to the intent of the Contractors' State License Law: "[T]he purpose of the Contractors' State License Law is to protect the public against the perils of contracting with dishonest or incompetent contractors. [Citations.] The Legislature intended that this statute be interpreted broadly in order that contractors could not easily evade the statute's protective purposes." (*Viking Pools, Inc. v. Maloney, supra,* 48 Cal.3d at pp. 606-607.)

While we do not intend to discourage contractors from repairing substandard work after having been cited for violations, and Tellis argues that finding a violation would have that effect, we recognize the greater need to require contractors to make sure their work meets trade standards before requesting payment in full. Furthermore, if the Board gives a contractor the opportunity to make repairs, the contractor should act expeditiously in making the repairs, knowing that any delay may subject the contractor to prosecution. Here, Tellis took the risk of further delaying needed repairs by refusing to perform some of the repairs in the manner recommended by the Board, such as the repair of the tile floor, and then, upon eventually agreeing to the recommended method, arranging for repairs by someone who was not available to make the repairs for over a month, instead of finding someone who could do the work right away.

Under such circumstances, we conclude there was sufficient evidence supporting the trial court's ruling that there was substantial evidence supporting the Board's finding that Tellis violated section 7113.

### 4. *Disposition*

The judgment is affirmed. Costs on appeal are awarded to the respondent.

Richli, Acting P. J., and Ward J., concurred.