Filed 11/15/18; pub. order 12/13/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ACCO ENGINEERED SYSTEMS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CONTRACTORS' STATE LICENSE BOARD, <br><br> Defendant and Respondent. | B282944 <br><br> (Los Angeles County Super. Ct. No. BS159740) |

APPEAL from judgment of the Superior Court of Los Angeles County, Mary Strobel, Judge. Affirmed.

Hunt Ortmann Palffy Nieves Darling & Mah, Dale A. Ortmann, Lisa Lawrence, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Thomas L. Rinaldi, Supervising Deputy Attorney General, Steve J. Pyun, Deputy Attorney General, for Defendant and Respondent.

_____

Plaintiff and appellant ACCO Engineered Systems, Inc. (Acco) appeals from a judgment denying Acco's petition for a writ of mandamus. Acco's writ petition sought review of an administrative decision adopted by the Registrar of the defendant and respondent the Contractors' State License Board (Board), finding Acco in violation of Business and Professions Code section 7110[1] for failing to obtain a building permit before replacing a boiler.

Acco contends it did not violate section 7110 because it did not willfully disregard the permit requirement. The company argues that both the administrative law judge and the trial judge erroneously interpreted the code section to apply to situations where a contractor inadvertently fails to obtain a permit. Acco further argues that even under the administrative judge's interpretation, the decision is not supported by substantial evidence. We reject Acco's various arguments and affirm the judgment.

_____

[1] All further statutory references are to the Business and Professions Code unless otherwise stated.

# FACTUAL AND PROCEDURAL BACKGROUND

Acco is a large contracting company that does over $800 million in work a year, ranging from large projects like the renovation of Dodger Stadium or construction on the Wilshire Grand building to smaller mechanical projects worth a few thousand dollars.

In 2014, the Board investigated a complaint that in 2011 and 2012, Acco had replaced a boiler at a commercial building without obtaining the permits required by a Los Angeles city ordinance that adopts the California Mechanical Code's permitting requirements. After receiving notice of the Board's investigation, Acco conducted its own investigation as well. The company acknowledged that permits were required and admitted that no permits were obtained at the time the work was conducted. It belatedly applied for and obtained the necessary permits in July 2014. Acco attributed the failure to obtain the needed permits to the inadvertence of a lower level employee.

The Board issued a citation, imposing a civil penalty of $500 on Acco for violation of section 7110, which provides that "Willful or deliberate disregard and violation of the building laws . . . constitutes a cause for disciplinary action." Acco appealed, and an administrative hearing took place in September 2015. Board investigator David Dance and Acco's Chief Executive Officer Peter H. Narbonne testified. Narbonne is the company's responsible managing officer or license qualifier for six of Acco's contractor's licenses. At the

hearing, it was undisputed that permits were required for installation of a boiler and a pressure vessel and that Acco completed the work without obtaining a permit. Both parties presented written briefs and oral argument on the key issue of whether Acco's failure to obtain the required permits was "willful" within the meaning of section 7110.

The administrative law judge made factual findings, which included the following: Acco had a valid contractor's license, including a license for the classification of "C-4— Boiler Hot Water Heating & Steam Fitting." In the 2011-2012 time frame, Acco performed work for a customer/building owner to replace a boiler in the building. Acco admitted that a permit was required before work commenced, and that it was responsible for obtaining the permit. Acco further admitted that, by mistake, it performed the work without a permit. Finding number 6 stated in full: "The mistake was that of an employee, a manager who had been instructed to check with [Acco's] in-house expert on building permits on whether a permit was required. All managers employed by [Acco] were so instructed with respect to any project as to which the question of whether a permit was required might arise. In this instance, the manager failed to check with the in-house expert. The boiler project was to exchange like for like, replacing an old boiler with a new one. Permits are not required for many like-for-

4

like exchanges."[2]  Acco became aware of the mistake when the Board began an investigation.  The company "promptly sought a permit for and inspection of the work.  The permit issued and by early August 2014, a final inspection of the work took place.  No corrections were required."

In its legal conclusions, the administrative judge found no evidence that Acco's failure to obtain a permit before replacing the boiler was "'deliberate' within the meaning of . . . section 7110;"[3] however, the administrative law judge found that Acco's conduct was "'willful.'"  Noting Acco's argument that the failure to obtain the required permit was an inadvertent mistake, and therefore should not be considered "willful" under section 7110, the court concluded that Acco's "manager who decided to proceed without a permit was doing so by disregarding both the law requiring a permit and an instruction from his employer to consult an in-house expert on building permits.  . . .  Such double disregard cannot be characterized as simply inadvertent, but

_____

[2] The employee manager referred to no longer worked at Acco by the time of the hearing, no testimony from that employee manager regarding his actions was introduced into evidence, and the company's witness, Narbonne, never talked to the employee and could only surmise what the employee was thinking.

[3] At the hearing, the investigator, Dance, testified he made no effort in his investigation to ask or determine whether an Acco representative made a conscious or deliberate decision not to obtain a permit.

rather willful misconduct within the meaning of the statute." Noting that civil penalties under the statute serve a dual purpose—to punish past conduct and to deter future misconduct—and acknowledging that Acco had made efforts to ensure compliance with the building laws and took prompt action to correct their mistake by obtaining the required permit, the administrative law judge reduced the penalty amount from $500 to the minimum civil penalty of $200.

Acco then filed a petition for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 with the trial court. Acco's petition, like the current appeal, asserted that the administrative decision erroneously interpreted section 7110 to not require a showing of specific intent to disregard and violate the building laws. Acco also argued that the Board had the burden to prove a violation of section 7110, and there was no evidence that Acco had willfully violated the building laws. The trial court denied the petition, reasoning that the term "willful" in section 7110 only requires a showing of general intent, not specific intent to violate the law as Acco was arguing. The trial court further found that the administrative record contained substantial evidence to support the administrative law judge's finding of a willful violation, because Acco's project manager made an affirmative decision to proceed without a permit when he disregarded his employer's instructions to consult Acco's permitting coordinator.

# DISCUSSION

Acco does not dispute that a Los Angeles city ordinance required permits for the boiler replacement, or that it did not obtain the required permits and was therefore in violation of the applicable building laws. Acco's argument for why section 7110 does not authorize disciplinary action in this particular case centers on the meaning of the term "willful" as used in that section. Acco argues that because the failure to obtain the required permits was an inadvertent mistake by a low-level employee, it was not a willful violation of the permit requirement. Acco argues that willful as used in section 7110 must be interpreted to require a specific intent to violate the law. In response, the Board argues that a general intent to act is sufficient to satisfy section 7110's requirement of a willful violation of the permit requirements.

Considering the statutory scheme as a whole, we reject Acco's arguments and agree with the Board that the Legislature's use of the term "willful" in section 7110 only requires a showing of general intent. We also conclude there is substantial evidence to support the administrative judge's determination that Acco willfully violated the applicable building laws. The fact that an individual employee may not have been aware of a specific local permit requirement does not excuse a corporate licensee from complying with the building laws.

***Standard of review***

On appeal, we review the administrative record to determine whether factual findings were supported by substantial evidence. (*Handyman Connection of Sacramento, Inc. v. Sands* (2004) 123 Cal.App.4th 867, 880–881 (*Handyman*) [where the challenged sanction is a fine, and not revocation or suspension of a petitioner's license, the trial court and the reviewing court determine whether substantial evidence supports factual findings]; *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 217–220.) We review questions of law de novo, applying our own independent judgment. (*Owen v. Sands* (2009) 176 Cal.App.4th 985, 989; *Handyman, supra,* at p. 880.) To the extent we are engaging in statutory interpretation, "we must give deference to the Board's interpretations, but not to the exclusion of other tools of statutory construction. '[T]he binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation.' (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [(*Yamaha*)].)" (*Handyman, supra,* at p. 881.)

8

***Statutory interpretation of the Contractors' State
License Law***

"Our role in construing a statute is to ascertain the
intent of the Legislature so as to effectuate the purpose of
the law.  [Citation.]  Because the statutory language is
generally the most reliable indicator of that intent, we look
first at the words themselves, giving them their usual and
ordinary meaning.  [Citation.]  We do not, however, consider
the statutory language in isolation, but rather examine the
entire substance of the statute in order to determine the
scope and purpose of the provision, construing its words in
context and harmonizing its various parts.  [Citation.]"
(*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040.)  "We
interpret relevant terms in light of their ordinary meaning,
while also taking account of any related provisions and the
overall structure of the statutory scheme to determine what
interpretation best advances the Legislature's underlying
purpose." (*Los Angeles County Bd. of Supervisors v. Superior
Court* (2016) 2 Cal.5th 282, 293.)  The legislative history of a
statute may be useful in this examination. (*Dyna–Med, Inc.
v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379,
1387.)  So may the interpretation of a statute by the agency
charged with implementing it.  (*Yamaha, supra,* 19 Cal.4th
at p. 7.)

The Contractors' State License Law (License Law) is
codified at Business and Professions Code section 7000 et
seq.  The License Law is to be given a "reasonable and
practical construction" "[i]n light of the intent of the

Legislature and the purpose behind the statutory scheme—to protect consumers and the public from dishonest or incompetent contractors." (*Viking Pools, Inc. v. Maloney* (1989) 48 Cal.3d 602, 607 (*Viking Pools*); see also *Handyman, supra,* 123 Cal.App.4th at pp. 881–882.)

Reviewing the statutory scheme as a whole, we begin with the relevant requirements for obtaining a contractor's license. (See, 9 Miller & Starr, Cal. Real Estate (4th ed. 2018) §§ 3:4–3:5, pp. 31-25–31-32.) The Board has authority to grant licenses not just to individuals, but to business entities such as partnerships, corporations, or limited liability companies. If a business entity applies for a license, it qualifies through an individual who is a responsible managing officer, manager, member, or employee. (*Id.* at p. 31-28; § 7068, subd. (b)(2)–(4).) The individual must demonstrate his or her general knowledge of the building, safety, health, and lien laws of the state and of the administrative principles of the contracting business. (§ 7068, subd. (d).) He or she is "responsible for exercising that direct supervision and control of his or her employer's or principal's construction operations to secure compliance with this chapter and the rules and regulations of the board." (§ 7068.1, subd. (a).) Failure to do so is grounds for disciplinary action and is a misdemeanor, punishable by imprisonment in jail for up to six months, a fine between $3,000 and $5,000, or both. (§ 7068.1, subd. (e); see also, 9 Miller & Starr, 9 Cal. Real Estate (4th ed. 2018) § 31.5, p. 31-29.)

"One of the key purposes of the contractor's license law is to *protect the public against dishonesty and incompetency* in the administration of the contracting business. [Citations.] The function of an administrative proceeding such as the one here is not criminal in that its goal is not to punish the prospective licensee but to protect the public. The hearing is to insure that the privileges granted under the license will not be exercised in derogation of the public interest." (*Housing Development Co. v. Hoschler* (1978) 85 Cal.App.3d 379, 388 (*Hoschler*), italics added [addressing a situation where the Board refused to grant a license].)

Disciplinary proceedings under the License Law serve a similar purpose of protecting the public. The purpose of such proceedings "'is to determine the fitness of a licensed contractor to continue in that capacity. It is not intended for the punishment of the individual contractor, but for the protection of the contracting business as well as the public by removing, in proper cases, either permanently or temporarily, from the conduct of a contractor's business a licensee whose method of doing business indicates a lack of integrity upon his part or a tendency to impose upon those who deal with him. . . .'" (*Viking Pools*, *supra*, 48 Cal.3d at p. 607.) The License Law authorizes disciplinary action against licensees for a wide variety of conduct, including willful departure from accepted trade standards (§ 7109), failure to maintain records (§ 7111), or overpricing after a state of emergency (§7123.5; Pen. Code, § 396). (See also 9 Miller & Starr, 9 Cal. Real Estate (4th ed. 2018) § 31.11,

11

p. 31-71–31-75 [listing grounds for disciplinary action].) The Board's authority includes not just authority to revoke or suspend a contractor's license, but also the authority to issue a citation and impose civil penalties between $200 and $15,000. (9 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 31.11, p. 31-69; see also §§ 7099–7099.5.)

### *Willful violation of building laws*

The portions of the License Law identifying grounds for disciplinary action vary, and some use the term "willful" in describing conduct subject to disciplinary action, while others do not. (See *Bailey-Sperber, Inc. v. Yosemite Ins. Co.* (1976) 64 Cal.App.3d 725, 729 (*Bailey-Sperber*).) The statutory scheme does not define the term "willful," however, "[w]e must assume that the difference in statutory phraseology among the sections indicates a legislative determination to differentiate between conduct not subject to discipline where inadvertent and that subject to discipline even inadvertent." (*Id.* at p. 729.) For example, the *Bailey-Sperber* court drew a distinction between sections that require willful conduct and those that do not. The court pointed out that section 7109 only makes departure from plans, specifications, and trade standards a cause for discipline if the departure was willful. In contrast, sections 7107 and 7113, which identify project abandonment and failure to complete within the contract price as causes for

12

disciplinary action, do not require that the actions be willful. (*Ibid.*, fn. 5.)

In interpreting disciplinary provisions of the License Law, two later cases have referred to the definition of willful given in Penal Code section 7, subdivision (1),[4] which requires only a general intent to perform an act, not a specific intent to violate a law. (*People v. Licas* (2007) 41 Cal.4th 362, 366 ["[c]onviction under a statute proscribing conduct done 'willfully and maliciously' does not require proof of a specific intent"].) In *Mickelson Concrete Co. v. Contractors' State License Bd.* (1979) 95 Cal.App.3d 631, at page 635 (*Mickelson*), the court cited to Penal Code section 7, subdivision (1)'s definition of "willfully" when it affirmed discipline under section 7109 based on facts showing a contractor's "purposeful departure from accepted trade standards which may be properly characterized as 'willful.'" In *Tellis v. Contractors' State License Bd.* (2000) 79 Cal.App.4th 153 (*Tellis*), a contractor challenged discipline imposed under section 7109, subdivision (a), for substandard work on a home. The statutory text stated, "A willful departure in any material respect from accepted trade standards for good and workmanlike construction

_____

[4] The subdivision states "[t]he word "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (Pen. Code, § 7, subd. (1).)

13

constitutes a cause for disciplinary action, unless the departure was in accordance with plans and specifications prepared by or under the direct supervision of an architect." (*Id.* at p. 158.)  The Board's argument in *Tellis* was similar to the one it makes in this case, that all that the statute requires is the willful act of performing substandard construction; there is no need to demonstrate that the contractor knew the work was substandard.  (*Id.* at pp. 158–159.)  The *Tellis* court briefly discussed the *Mickelson* decision, noting the *Mickelson* court's citation to Penal Code section 7, subdivision 1.  (*Id.* at p. 159.)  The *Tellis* court avoided deciding whether general or specific intent was necessary, instead assuming that section 7109 requires a contractor to know the work is substandard.  It then concluded there was sufficient evidence to support a finding of such knowledge, given the egregious nature of the substandard work, including tiles falling off and a leaking shower stall.  (*Id.* at pp. 159–160.)

Acco points out that the only case involving section 7110, the provision at issue here, rather than 7109, focused on the meaning of "willful" as used in Labor Code section 227, not in section 7110.  (*Hoschler*, *supra*, 85 Cal.App.3d at p. 389.)  In *Hoschler*, the contractor argued that its managing member's good faith belief he did not have an obligation to make certain payments to unions negated any potential violation of Labor Code section 227, which prohibited an employer from "willfully or with intent to defraud" failing to make such payments.  The court rejected

14

the argument, finding substantial evidence in support of the administrative judge's conclusion that the failure to pay was not based upon a good faith dispute. (*Id.* at pp. 388–389.)

Acco argues that instead of following the general intent definition of willful set forth in Penal Code section 7, subdivision (1), we should follow *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174 (*Kwan*) and find that a more targeted definition of willful is needed under section 7110. In *Kwan*, a state consumer warranty act commonly known as a "lemon law" authorized a civil penalty if a car dealership willfully failed to comply with the lemon law's requirements. The lemon law imposed various obligations on car dealers, including an obligation to replace or refund the cost of any new car if recurring problems could not be satisfactorily repaired after multiple attempts. (Civ. Code, §§ 1790, 1793.2, subd. (d)(2).) Under the law, a car buyer could obtain compensatory damages from a dealer who fails to comply with the law's requirements, and the buyer would be entitled to additional civil penalties if the dealer's failure to comply was "willful." (Civ. Code, § 1794, subds. (a), (c).) The *Kwan* court held that it was error to give a jury instruction defining willful as "'simply a purpose or willingness to commit the act or to make the omission in question'" (*Kwan, supra,* at p. 181) because it "'would render meaningless or inoperative the Act's distinction between willful and nonwillful violations.'" (*Id.* at p. 184.)

In *Kwan*, the jury imposed a civil penalty on the dealer, despite its manager's claim that his failure to offer

15

the plaintiff either a refund or a replacement vehicle was based on his good faith, reasonable belief that the plaintiff had been satisfied by the dealer's final repair of the vehicle. (*Id.* at pp. 179–180.) The dealer argued that in light of that contention, the jury instruction on willfulness—modeled after Penal Code section 7, subdivision (1) and stating that a "willful" act or omission "'implies simply a purpose or willingness to commit the act, or to make the omission'"— was inadequate because it failed to distinguish between a dealer who believed, reasonably and in good faith, that no refund or replacement was required under the Act, and one who had no such belief. (*Kwan, supra,* 23 Cal.App.4th at pp. 180–181.)

But the holding and reasoning in *Kwan* is necessarily limited to the specific statutory scheme and fact situation under consideration in that case. The court made the limitations of its holding clear, stating that the defendant "was entitled to an instruction informing the jury its failure to refund or replace was not willful if it reasonably and in good faith believed the facts did not call for refund or replacement. Such an instruction would have given the jury legal guidance on the principal issue before it in determining whether a civil penalty could be awarded. The Penal Code definition of willful, by itself, gave inadequate guidance under the circumstances of this case." (*Kwan, supra,* 23 Cal.App.4th at pp. 186–187.)

Turning to the License Law, we are not persuaded by Acco's argument that the term "willful" in section 7110 must

16

be interpreted to require specific intent, meaning that the licensee intentionally or knowingly decided to disregard and violate the building laws.  First, as Acco appears to recognize, such an interpretation would result in the term "willful" being given a different meaning in section 7110 than in section 7109.  (See *Mickelson*, *supra*, 95 Cal.App.3d at p. 635.)  Second, and more significantly, the rules of statutory interpretation require us to "'harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.]'"  (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.)  An interpretation of section 7110 that permits discipline when a licensee fails to comply with the specified laws is consistent with other provisions of the License Law that require licensees to demonstrate knowledge of building laws and other state laws as a condition of obtaining a license (§ 7068, subd. (d)), imposes penalties for failing to exercise direct supervision and control over construction operations to ensure compliance with applicable rules and regulations (§ 7068.1, subd. (a), (e)), and creates a rebuttable presumption that "construction performed without a permit is a willful and deliberate violation."  (§ 7090.)

Acco argues that interpreting "willful" to only require a general intent as described in Penal Code section 7, subdivision (1), renders the term meaningless and converts section 7110 into a strict liability statute where every violation of a building requirement would be subject to

17

disciplinary action.  We disagree.  Interpreting section 7110's use of the word "willful" as requiring general intent does not result in strict liability for licensees.  We can imagine the absence of a willful or deliberate disregard of building laws occurring in the following scenario:  A contractor attempts to obtain a building permit but is unable to obtain one because the local permitting authority incorrectly believes no permit is required.  Even if it is later established that the permit should have issued, the contractor's failure to obtain the required permit cannot be considered a "willful" violation of the applicable laws, and therefore discipline under section 7110 would not be warranted.  (See, e.g., *Rappleyea v. Campbell* (1994) 8 Cal.4th 975 [relief from default judgment appropriate where litigants were initially mistakenly misinformed by court clerk and later by an attorney].)  We can also imagine the absence of willful or deliberate disregard of building laws where a city's permitting requirements are ambiguous or subject to interpretation.  While those particular facts are not before us, we venture to say that such factual situations might result in a licensee's challenged conduct not coming within the ambit of disciplinary action under section 7110, even where there was a finding of a violation of the building laws.

　　We further reject Acco's argument that liability under section 7110 is precluded where a licensee acts in good faith.  Even Justice Werdegar agreed that "moral blameworthiness is not a necessary element of willful conduct" under the provision of the Civil Code she was construing in *Kwan*.

18

(*Kwan*, *supra*, 23 Cal.App.4th at p. 181, citing *Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 882–884.) Penal Code section 7, subdivision (1), also clarifies that an act may be done "willfully" without an intent "to violate law, or to injure another, or to acquire any advantage." (Pen. Code, § 7, subd. (1).) As the Board points out, the Penal Code definition of willfulness has been adopted in other cases involving discipline of members of licensed professions as well. (See, e.g., *Dahlman v. State Bar* (1990) 50 Cal.3d 1088, 1093 [willful violation of rules governing attorneys "does not require bad faith or actual knowledge of the provision which is violated"].)

### *Substantial evidence supports the finding of a violation of section 7110*

Acco contends that, even if not interpreted to require a showing of specific intent to violate the building laws, there is not substantial evidence in the administrative record to support the finding that it willfully disregarded the building laws in violation of section 7110. We disagree.

Acco tries to characterize the failure to obtain a permit as an "inadvertent mistake" based on the failure of a single employee.[5] But the employee's intentional acts are attributable to the company. The company holds the

---

[5] Acco did not argue to the administrative law judge or to the trial court, and does not argue on appeal, that it is not responsible for actions of its employee manager.

contractor's license, and Narbonne is the "responsible managing officer." As such, he is "responsible for exercising that direct supervision and control of [Acco's] construction operations to secure compliance with" the laws and regulations applicable to contractors, at risk of being fined or even prosecuted for a misdemeanor. (§ 7068.1, subd. (a), (e).) Acco emphasizes that its policy and procedure is that a project manager is "supposed to go through the permit coordinator to determine permit requirements and actually pull the permit." Here, the evidence supports that the project manager made an affirmative decision not to inquire about the permitting requirements, and to proceed with the boiler replacement having no permit. This conduct constitutes willful disregard of the building laws.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent, the Contractors' State License Board.


MOOR, Acting P.J.

We concur:



KIM, J.



JASKOL, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/13/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ACCO ENGINEERED SYSTEMS, INC., | B282944 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS159740) |
| v. | |
| CONTRACTORS' STATE LICENSE BOARD, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on
November 15, 2018, was not certified for publication in the
Official Reports.  Upon petitioner's request and for good

22

cause appearing, it is ordered that the opinion shall be published in the official reports.


Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.



_____          _____
        _____

MOOR, Acting P.J.          KIM, J.          JASKOL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.