[No. S004587. Apr. 17, 1989.]

VIKING POOLS, INC., Plaintiff and Appellant, v.
JACK MALONEY, as Registrar of Contractors, etc., Defendant and
Respondent.

## COUNSEL

Michael L. Pickering and Jerrald K. Pickering for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Steven M. Kahn and Jana L. Tuton, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BROUSSARD, J.**—In this case we must decide whether a contractor's breach of an express, written warranty is a ground for discipline under the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.).[1] For the reasons set forth below, we conclude that it is.

In 1977, Viking Pools, Inc. (Viking) entered into a written contract with William and Viola Ostrom to supply and install a fiberglass pool for $5,038.02. The Ostroms originally considered purchasing the pool and installing it themselves. They changed their minds, however, when Viking informed them that there would be no warranty unless the Ostroms contracted with Viking to install the pool. The Ostroms entered into such a contract with Viking on August 15, 1977, specifically because they wanted the warranty. Viking completed installation of the pool on August 25, 1977, and immediately thereafter the Ostroms paid Viking in full.

Viking warranted in pertinent part that "Provided VIKING has installed the pool, VIKING warrants to repair or replace defective material or installation thereof for a period of 10 years from the date hereof" except for any defect in the pump or filter.

In 1980, brown spots began appearing on the pool surface. The spots consisted of tiny thorn-like growths protruding from the gel coat, as well as blisters on the gel coat. By 1983, the spots and blisters covered the entire surface of the pool. An expert witness at the administrative hearing in 1983

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

testified that the spots and blisters were likely caused by contaminants in the materials used to manufacture the pool, and that the phenomenon was known as "black plague" in the pool industry. He said the remedy would be to sand down and resurface the pool, and estimated the cost of doing so at $5,000—about the same amount the Ostroms originally paid to Viking under the contract.

The Ostroms first notified Viking about the spots and blisters in mid-1981. Viking ignored and then refused to correct the problem, thereby breaching the warranty. In mid-1983, the Ostroms complained to the Contractors' State License Board, which filed a disciplinary accusation against Viking. The accusation described the terms of the written contract between the Ostroms and Viking, including the warranty clause. It also described the problem which had developed with the Ostroms' pool and alleged that it was a condition covered by the warranty. The accusation further averred that Viking had subjected its license to discipline under "section 7107 in that it had abandoned its express written warranty on the Ostrom project, without legal excuse, by failing and refusing to correct the defective condition in accordance with the terms and conditions of the warranty."[2] A separate allegation was asserted that Viking violated "section 7113 in that it failed in a material respect to complete the Ostrom project for the contract price and the owners will be required to spend substantially in excess of the contract price to correct the defective condition and thereby complete the project in accordance with the contract."[3]

Following a hearing, an administrative law judge issued a proposed decision finding "clear and convincing evidence beyond a reasonable certainty" to sustain the charges. The judge's proposed decision ordered that Viking's license be revoked, with revocation stayed and probation imposed for three years upon certain conditions including restitution to the Ostroms. The registrar of contractors subsequently adopted this decision.

Viking petitioned the superior court for administrative mandate, but the court upon an independent review of the record found that Viking's breach of the express, written warranty violated sections 7107 and 7113, and denied relief. Viking then appealed to the Court of Appeal, which reversed on the ground that the language of sections 7107 and 7113 did not embrace the

[2] Section 7107 provides: "Abandonment without legal excuse of any construction project or operation engaged in or undertaken by the licensee as a contractor constitutes a cause for disciplinary action."

[3] Section 7113 states: "Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or operation or in any modification of such contract constitutes a cause for disciplinary action."

type of misconduct which Viking was found to have committed. We granted review of the matter because construction of the statute presents an issue of statewide significance. For the reasons set forth below, we conclude the interpretation announced by the Court of Appeal was incorrect.

■ Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002 [239 Cal.Rptr. 656, 741 P.2d 154]; *People* v. *Overstreet* (1986) 42 Cal.3d 891 [231 Cal.Rptr. 213, 726 P.2d 1288].) In determining intent, we look first to the words themselves. (*Woodhead, supra,* 43 Cal.3d at p. 1007; *Overstreet, supra,* 42 Cal.3d at p. 895.) If the statutory language is clear and unambiguous, there is no need for construction. (*Woodhead, supra,* 43 Cal.3d at pp. 1007-1008; *Overstreet, supra,* 42 Cal.3d at p. 895.)

Section 7107 proscribes a contractor from abandoning without legal excuse a "construction project or operation." Similarly, section 7113 prohibits a contractor from materially failing to complete the "construction project or operation" for the price stated in the contract. ■ Viking contends that once it completed *physical* installation of the pool on August 25, 1977, it could no longer be disciplined under section 7107 for abandonment of, or under section 7113 for material failure to complete, the "construction project or operation." The Attorney General, on behalf of the Contractors' State License Board, argues that the scope of a "construction project or operation" is determined by the contractual agreement between the parties, and that the breach of a contractual warranty is an abandonment of, and material failure to complete, the "construction project or operation."

The touchstone phrase in both sections—"construction project or operation"—is susceptible of only one reasonable interpretation in light of the clear, prophylactic purpose underlying the entire statutory system of which it is a part. (See *People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322], and cases there cited.) Contrary to the narrow view urged by Viking, the statutory scheme compels the conclusion that the phrase "construction project or operation" in sections 7107 and 7113 refers to the construction project or operation as determined by the contract agreed to by the parties.

■ This court has stated that the purpose of the Contractors' State License Law is to protect the public against the perils of contracting with dishonest or incompetent contractors. (*Asdourian* v. *Araj* (1985) 38 Cal.3d 276, 289 [211 Cal.Rptr. 703, 696 P.2d 95]; see also *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597 [130 Cal.Rptr. 110]; *Conderback, Inc.* v. *Standard Oil*

*Co.* (1966) 239 Cal.App.2d 664 [48 Cal.Rptr. 901]; *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141 [308 P.2d 713].) The Legislature intended that this statute be interpreted broadly in order that contractors could not easily evade the statute's protective purposes. (*Johnson* v. *Mattox* (1968) 257 Cal.App.2d 714 [65 Cal.Rptr. 185].)

The Court of Appeal in *West Coast etc. Co.* v. *Contractors' etc. Bd.* (1945) 72 Cal.App.2d 287, 301-302 [164 P.2d 811], painstakingly explained the purpose of administrative disciplinary proceedings under the Contractors' State License Law: "The object of establishing the Contractors' State License Board and vesting in the registrar of contractors disciplinary powers is for the protection of the public. The law is intended primarily to keep the contracting business clean and wholesome, to the end that it may merit the respect and confidence of the public in general and in particular those who have recourse to contractors in the construction or improvement of their properties. Therefore, the purpose of a disciplinary proceeding such as the one with which we are here concerned is to determine the fitness of a licensed contractor to continue in that capacity. It is not intended for the punishment of the individual contractor, but for the protection of the contracting business as well as the public by removing, in proper cases, either permanently or temporarily, from the conduct of a contractor's business a licensee whose method of doing business indicates a lack of integrity upon his part or a tendency to impose upon those who deal with him. . . ."

 ██ In light of the intent of the Legislature and the purpose behind the statutory scheme—to protect consumers and the public from dishonest or incompetent contractors—we must afford the statute a reasonable and practical construction. (*Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 574 [146 Cal.Rptr. 653]; *Wilson* v. *County of Santa Clara* (1977) 68 Cal.App.3d 78 [137 Cal.Rptr. 78].)[4] ██ The phrase "construction project or operation" can only be construed to mean the construction project or operation as defined by the contract between the parties. If we were to narrowly construe the phrase "construction project or operation" to mean only an apparent completion of the physical project alone, then, as Viking did here, a contractor could induce a consumer to enter a contract by making an express warranty, ostensibly complete

---

[4] We have explained that the purpose of the Contractors' State License Law is to protect consumers and the public who enter into contracts with contractors, and not to punish individuals. If a statute's purpose is not to punish but to accomplish some other legitimate governmental purpose, then the statute is considered nonpenal. (*Trop* v. *Dulles* (1958) 356 U.S. 86, 96 [2 L.Ed.2d 630, 640, 78 S.Ct. 590].) Hence, given the statute's purpose, like other statutes that provide for disciplinary action against licensees, the Contractors' State License Law is not penal in nature. Since its purpose is nonpenal, the Court of Appeal below erred by applying a narrow construction that it said, "though developed in the criminal context, is applicable in administrative proceedings."

physical construction, and deem the construction project "complete." Thereafter the contractor could ignore his basic contractual obligations to the consumer, including the warranty, and take comfort in the knowledge that he has avoided discipline under sections 7107 and 7113. Such a construction would leave the consumer unprotected against dishonest or incompetent contractors, and would fly in the face of legislative intent and statutory purpose, as well that of common sense.

Our construction is consistent with the Courts of Appeal which have considered this phrase in sections 7107 and 7113. The court in *Bailey-Sperber, Inc.* v. *Yosemite Ins. Co.* (1976) 64 Cal.App.3d 725 [134 Cal.Rptr. 740], construed the phrase "construction project or operation" in sections 7107 and 7113 to mean that as defined in the contract. The court there held that a contractor's complaint, based on violations of sections 7107 and 7113, adequately stated a cause of action against the subcontractor who " 'breached said sub-contract by failing to perform *any* of the covenants and conditions thereof.' " (64 Cal.App.3d at p. 729, italics in original.) Similarly, in *Mickelson Concrete Co.* v. *Contractors' State License Bd.* (1979) 95 Cal.App.3d 631 [157 Cal.Rptr. 96], the court broadly construed the phrase "construction project or operation" and held that a contractor's failure to take corrective action to make an ostensibly completed construction project an acceptable one that met trade standards was a violation of section 7113.

Perhaps the most telling and potent evidence of the Legislature's intent, however, is its 1980 amendment to section 7091 of the Contractors' State License Law. (Stats. 1980, ch. 865, § 1, p. 2699; Stats. 1980, ch. 1210, § 2, p. 4090.) Section 7091 sets forth the statute of limitations for bringing disciplinary actions against licensed contractors. The 1980 amendment added the following language to section 7091: "Accusations regarding an alleged breach of an express, written warranty for a period in excess of three years issued by the contractor shall be filed within the duration of that warranty."[5] Although section 7091 allows consumers three years to file an accusation against a contractor after the act or omission alleged as the ground for disciplinary action, the 1980 amendment specifically extended the length of time during which a consumer can file an accusation against a contractor for a breach of an express, written warranty. (*Review of Selected 1980 California Legislation* (1980) 12 Pacific L.J. 235, 277.) The 1980 amendment indicates that the Legislature believed it had *already* included a breach of an express, written warranty as a ground for discipline in the Contractors' State License Law.

The Legislature enacted the 1980 amendment after case law had construed the phrase "construction project or operation" in the Contractors'

---

[5] Although section 7091 has recently been amended (Stats. 1987, ch. 1264, § 5, No. 5 Deering's Adv. Legis. Service, pp. 4634-4635), the language regarding the breach of an express written warranty remains unchanged.

State License Law to mean that as defined by the contractual agreement between the consumer and the contractor. (*Bailey-Sperber, supra,* 64 Cal.App.3d 725; *Mickelson Concrete Co., supra,* 95 Cal.App.3d 631.) ■ The Legislature is deemed to be aware of existing laws and judicial decisions construing the same statute in effect at the time legislation is enacted, and to have enacted and amended statutes " ' "in the light of such decisions as have a direct bearing upon them." ' " (*Overstreet, supra,* 42 Cal.3d 891; *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; *People* v. *Weidert* (1985) 39 Cal.3d 836, 844-846 [218 Cal.Rptr. 57, 705 P.2d 380]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, 978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].)

■ We cannot presume that the Legislature's 1980 amendment of section 7091 was a meaningless and idle gesture. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].) Instead, as we have stated, we view the 1980 amendment of section 7091 as powerful evidence that in fact the Legislature believed that it had already included a breach of an express, written warranty as a ground for discipline of contractors in sections 7107 and 7113. Our construction of the language of those sections reflects the Legislature's intent, harmonizes those sections with the entire statutory scheme and its purpose of protecting the public from dishonest or incompetent contractors, and is wholly consistent with the case law.

Therefore, we hold that Viking's breach of an express, written warranty is an abandonment of, and a material failure to complete, a construction project or operation within the meaning of sections 7107 and 7113. Accordingly, we reverse the judgment of the Court of Appeal.

Lucas, C. J., Mosk, J., Panelli, J., Eagleson, J., Kaufman, J., and Woods (Arleigh M.), J.,* concurred.

---

*Presiding Justice, Court of Appeal, Second Appellate District, Division Four, assigned by the Chairperson of the Judicial Council.