ABRAHIM & SONS ENTERPRISES, a California corporation; Ricmar Inc, a California corporation; Anan Bisharat, an individual; Tony Calafato, an individual; Ebco Oil Inc., a California corporation; Roshan Gupta, an individual; Carroll Hansen, an individual dba Bell Air Shell; Thomas A. Krantz, an individual; Rick–Mik Enterprises Inc., a California corporation; O K Services Inc., a California corporation; C&J Fueling Services, Inc., a California corporation; Michael J. Noble, an individual; Mehran Kevin Shilyan, an individual; Slater Auto Care, a California corporation; Craig Walton, a general partnership; Orange County Oil Company, a California corporation; Amina Oil Company, a California corporation; David Q. Helm, an individual; Patrick Bellamy, dba Sunny Oaks Shell; Plaza Shell Inc., a California corporation; David Moreno, an individual; James Trabbie, an individual; Sand L Oil JV, a joint venture; Harjinder Singh Sandha, an individual; Faten Ibarra, a general partnership with Hani Maksimous; Paul Enstad, an individual; Ramzy Hanna, an individual; Jerrard Inc.; Parshotam Kalyanbhai Badreshia, an individual aka PK Babreshia; Seyed Reza Hedayat, an individual; Seyed Jalal Karimi, an individual; Tom Lerdsuwanrut, an individual; Morteza A. Ahangar, an individual; Lucky Oil Company Inc., a California corporation; Boyce E. Walton, an individual; Boyce E. Walton and Craig Walton, a general partnership; William Bill Reed and Carol Reed, a general partnership; Douglas B. Keith and Trudy Keith, a general partnership; John Anderson and Sharon Anderson, a general partnership; Nick Diliddo and Frank Diliddo, a general partnership; Hani Maksimous and Faten Ibarra, a general partnership; Vivian Maksimous and Hani Maksimous, a general partnership; Sean Arrinkouh and Farshid Fadakar, a general partnership; Abdolkhalegh Nassiri and Marzieh Massiri, a general partnership dba A and M Nassiri; Archie Burton and Rae Burton, a general partnership, Plaintiffs–Appellants,

v.

EQUILON ENTERPRISES, LLC, a Delaware limited liability corporation; Shell Oil Company, a Delaware corporation; Shell Oil Products Company, a Delaware corporation; Texaco Inc, a Delaware corporation; Texaco Refining and Marketing, Inc., a Delaware corporation; Does, Does 1 through 50 inclusive, Defendants–Appellees.

No. 00–56653.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2002.

Filed April 4, 2002.

Order Filed June 7, 2002.

Guy J. Gilbert, Carroll Gilbert and Bachor, Brea, CA, for plaintiffs-appellants.

James Severance, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for defendants-appellees.

Before PREGERSON, RYMER, and T.G. NELSON, Circuit Judges.

## ORDER

T.G. NELSON, Circuit Judge.

The request to publish the unpublished Memorandum disposition is GRANTED. The Memorandum disposition filed April 4, 2002, is redesignated as an authored Opinion by Judge T.G. Nelson.

## OPINION

Appellants, a group of independent dealers who operate gas stations leased from Shell or Texaco, allege that the oil companies violated California law by transferring the gas stations to a limited liability company without first offering Appellants a chance to buy the stations. Appellees argue that California law does not apply to this situation because Appellees merely contributed their assets to a limited liability company that they controlled. The district court agreed with Appellees and granted their summary judgment motion. We reverse the district court.

## I.

Appellants are forty-three independent dealers who operate Shell or Texaco gasoline stations in southern California. All appellants leased their stations from, and had dealer agreements with, Shell or Texaco. In 1998, Shell and Texaco addressed growing concerns about declining oil prices, declining profits, and increased competition by combining their retail marketing and refining activities into a limited liability company, called Equilon Enterprises. They contributed all of their western refining and marketing assets to Equilon and assigned the gas station leases and dealer agreements to Equilon as well. In exchange, Shell and Texaco, as the sole members of Equilon, received 100% of the ownership interests in the limited liability company.[1] The individual gas stations continued to sell Shell and Texaco products under their same leases and agreements.

Appellants claim that Shell and Texaco violated California Business & Professions Code § 20999.25(a) by transferring the gas stations to Equilon without offering Appellants a chance to purchase the stations. Section 20999.25(a) prohibits a franchisor from selling, transferring, or assigning an interest in a premises to another person unless he or she first makes a bona fide offer to sell that interest to the franchisee. Alternatively, if the franchisor receives an acceptable offer from another party to buy the premises, the franchisor must offer the franchisee a right of first refusal.[2]

After Appellants filed their claim in state court, Appellees removed the case to federal district court on the basis of diversity and moved for summary judgment. The district court granted the motion, holding that Shell and Texaco's contribution of the gas stations to Equilon was not a sale, transfer, or assignment of the stations to another person. Appellants appeal that decision.[3] We have jurisdiction

---

1. Shell owns 56% of Equilon and Texaco owns 44% based on the value of the assets they contributed.

2. Cal. Bus. & Prof.Code § 20999.25(a).

3. The district court also held that the Petroleum Marketing Practices Act, 15 U.S.C. § 2801

to hear this appeal pursuant to 28 U.S.C. § 1291.

## II.

We review a grant of summary judgment de novo.[4] We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law.[5]

## III.

This case involves the statutory interpretation of California Business & Professions Code § 20999.25(a), which reads in relevant part:

> In the case of leased marketing premises as to which the franchisor owns a fee interest, the franchisor *shall not sell, transfer, or assign to another person* the franchisor's interest in the premises unless the franchisor has first . . . made a bona fide offer to sell, transfer, or assign to the franchisee the franchisor's interest in the premises. . . .[6]

No California cases interpret the phrase "sell, transfer, or assign to another person" within the meaning of this statute. Likewise, no cases interpret the identical language found in the Petroleum Market-

ing Practices Act,[7] after which the California statute is patterned.[8] Therefore, we must decide how the California Supreme Court would interpret that phrase and whether the phrase encompasses the transaction at issue here.

When interpreting a statute, we attempt to "ascertain and effectuate legislative intent."[9] In determining that intent, we must first look to the words of the statute, giving them their ordinary, common sense meaning.[10] If the words of the statute are clear and unambiguous, there is no need to resort to other indicia of legislative intent.[11] Only if the meaning is not clear will we turn to legislative history to help resolve the ambiguity.

California Business & Professions Code § 20999.25 indisputably governs the parties' relationship. The question here is whether Shell and Texaco's contribution of assets to Equilon falls under Section 20999.25(a). To decide this question, we must determine whether: (1) Equilon is "another person" and (2) the contribution of assets was a sale, transfer, or assignment. We hold that the ordinary understanding of the words in Section 20999.25(a) encompasses the contribution of properties to Equilon in this case.

---

*et seq.*, did not preempt Cal. Bus. & Prof.Code § 20999.25. Appellants do not appeal that decision.

4. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001).

5. *Id.*

6. Cal. Bus. & Prof.Code § 20999.25(a) (emphasis added).

7. 15 U.S.C. § 2802(b)(2)(E)(iii).

8. *See Forty–Niner Truck Plaza, Inc. v. Union Oil Co. of Cal.*, 58 Cal.App.4th 1261, 1273, 68 Cal.Rptr.2d 532 (Cal.Ct.App.1997) (referring to the Petroleum Marketing Practices Act as the federal counterpart of the California Act);

*Yeroushalmi v. Miramar Sheraton*, 88 Cal. App.4th 738, 748–49, 106 Cal.Rptr.2d 332 (Cal.Ct.App.2001) (noting that federal decisions construing a federal statute can be used to construe the terms of a state statute patterned after the federal one).

9. *Kaiser Found. Health Plan, Inc. v. Lifeguard, Inc.*, 18 Cal.App.4th 1753, 1760, 23 Cal. Rptr.2d 235 (1993) (quoting *Viking Pools, Inc. v. Maloney*, 48 Cal.3d 602, 257 Cal.Rptr. 320, 770 P.2d 732, 734 (1989)).

10. *Day v. City of Fontana*, 25 Cal.4th 268, 105 Cal.Rptr.2d 457, 19 P.3d 1196, 1198–99 (2001).

11. *Id.* at 1199.

### A. *Another Person*

■ We must first determine what types of entities fall within the meaning of "another person" under Section 20999.25(a). We believe that corporations and limited liability companies (LLCs) fall within that meaning. Corporations and LLCs are distinct legal entities, separate from their stockholders or members.[12] The acts of a corporation or LLC are deemed independent of the acts of its members.[13] For this reason, both corporations and LLCs are included within the definition of "person" in the California Corporations Code.[14] The purpose of forming these types of businesses is to limit the liability of their shareholders and members.[15]

■ LLCs were not a form of business entity at the time the California legislature enacted Section 20999.25(a). However, the legislature had already enacted the California Corporations Code.[16] Thus, when it enacted Section 20999.25(a), the legislature understood that corporations were considered distinct legal entities. Considering the legislature's understanding of corporations at the time it enacted Section 20999.25(a), and the fact that LLCs are also treated as distinct legal entities, both corporations and LLCs fit within the meaning of "another person" as stated in Section 20999.25(a). Because Equilon is an LLC, it is distinct from its members

Shell and Texaco and is "another person" under Section 20999.25(a).

Shell and Texaco argue that Equilon is not a distinct entity because they own and control Equilon. In essence, they ask us to disregard the corporate form they themselves created because the form does not benefit them here. We refuse to do so. Members own and control most LLCs, yet the LLCs remain separate and distinct from their members.[17] Indeed, the separate and distinct nature of LLCs is their reason for existence. Just because it happens not to benefit Shell and Texaco here is no reason to disregard the formation of this entity. Based on the common understanding of how an LLC works, Equilon fits within the meaning of "another person."

Finally, common sense dictates that Equilon is not the same entity as Shell or Texaco individually. Equilon is owned jointly by Shell and Texaco. The gas stations, which previously were owned by only one oil company, now will be controlled and influenced by both companies. Therefore, the current owner of the gas stations is not identical to the previous owners. We conclude that Equilon is "another person" under Section 20999.25(a).

### B. *Sale, Transfer, or Assignment*

■ The second part of our analysis is whether the oil companies' contribution of

---

**12.** *Sonora Diamond Corp. v. Superior Court of Tuolumne County,* 83 Cal.App.4th 523, 538, 99 Cal.Rptr.2d 824 (Cal.Ct.App.2000) (corporations); *PacLink Communications Int'l., Inc. v. Superior Court of Los Angeles County,* 90 Cal.App.4th 958, 963, 109 Cal.Rptr.2d 436 (2001) (limited liability companies).

**13.** California Corporations Code § 17003 states that an LLC has all the powers of a natural person in carrying out its business activities.

**14.** Cal. Corp.Code § 17001(ae).

**15.** *PacLink,* 90 Cal.App.4th at 963, 109 Cal. Rptr.2d 436.

**16.** The majority of the California Corporations Code was enacted in 1975 while Section 20999.25(a) was enacted in 1981. The provisions in the Code governing LLCs were not enacted until 1994.

**17.** *See PacLink,* 90 Cal.App.4th at 963, 109 Cal.Rptr.2d 436 (quoting 9 Witkin, Summary of California Law § 43A, at 346 (Supp. 2001)).

assets to Equilon was a sale, transfer, or assignment. The district court focused on the fact that the transaction was a "tax-free exchange" in holding that it was not a sale, transfer, or assignment. While the tax-free nature of the transaction indicates that the transaction was not a sale, we see no reason why such a transaction could not be a transfer.

According to the rules of statutory construction, transfer must mean something different than sale or assignment.[18] In common, everyday parlance, transfer has a broad meaning. Webster's Dictionary defines "transfer" as "[t]o convey or make over the possession or legal title of (e.g., property) to another."[19] Because Shell and Texaco relinquished their title, possession, and control of the gas stations to Equilon, it makes perfect sense to say they transferred the properties to Equilon.

In support of the idea that the oil companies transferred the gas stations, we note that the record contains a copy of a corporate grant deed, which shows that Shell transferred title of its properties to Equilon. The deed states that Shell, as grantor, granted Equilon all of Shell's rights, title, and interest in the gas stations. We assume that Texaco executed a similar deed. In addition, the individual oil companies did not maintain control of their properties. Both companies submit-ted forms to the Securities Exchange Commission (SEC) documenting the formation of the limited liability company. In Shell's SEC form, the company admitted that it does not exercise control over Equilon.[20] Texaco's SEC form stated that Texaco and Shell jointly control Equilon. Therefore, neither company maintained complete control over its former properties.

Finally, under the California Corporations Code, Shell and Texaco have no interest in the property of Equilon. Once members contribute assets to an LLC, those assets become capital of the LLC and the members lose any interest they had in the assets.[21] Thus, once Shell and Texaco contributed the gas stations to Equilon, they no longer had an interest in the stations and could not individually exert control over them. The oil companies no longer had title, possession, or control over the properties. Therefore, their contribution was a transfer to Equilon.

Because the plain language of the statute is unambiguous, we do not need to resort to the legislative history. We hold that the transaction at issue here was a transfer to another person, Equilon, which triggered the duty to offer the gas stations to the franchisees first. We therefore re-

---

**18.** *Herman v. Los Angeles County Metro. Transp. Auth.*, 71 Cal.App.4th 819, 826, 84 Cal.Rptr.2d 144 (.1999) ("[A] construction making some words surplusage is to be avoided." (quoting *South Dakota v. Brown*, 20 Cal.3d 765, 144 Cal.Rptr. 758, 576 P.2d 473, 481 (1978))).

**19.** Webster's II New Riverside University Dictionary (1994).

**20.** The form states that "Shell Oil owns 56 percent of Equilon but does not exercise control and therefore accounts for its investment in Equilon using the equity method of accounting."

**21.** Cal. Corp.Code § 17001(g) (defining contribution as any money, property, or service rendered that a member contributes to an LLC as capital); *id.* § 17300 ("A member or assignee has no interest in specific limited liability company property."). *See also Pac-Link*, 90 Cal.App.4th at 964, 109 Cal.Rptr.2d 436 ("Because members of the LLC hold no direct ownership interest in the company's assets ..., the members cannot be directly injured when the company is improperly deprived of those assets.").

verse the district court and remand for further proceedings.

REVERSED and REMANDED.